Mark C. Mao (SBN 236165)
mmao@bsfllp.com
Beko O. Reblitz-Richardson (SBN 238027)
brichardson@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:   (415) 293-6800
Facsimile:   (415) 293-6899

Edward H. Takashima (SBN 270945)
etakashima@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017
Telephone:   (213) 629-9040
Facsimile:   (213) 629-9022

*Attorneys for Defendant PubMatic, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO ELLIOTT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PUBMATIC, INC.<br><br>Defendant. | Case No. 21-cv-01497-PJH<br><br>**DEFENDANT PUBMATIC, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hearing Date: August 12, 2021<br>Time:   1:30 p.m.<br>Place:   Courtroom 3<br>Judge:   Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.  Plaintiff Fails to Plead Article III Standing or a U.K. GDPR Violation. ............... 1

    B.  Plaintiff's Allegations Relating to the Privacy Shield Further Suggest Forum Shopping. ................................................................................................................ 3

    C.  The FAC Should Be Dismissed on Forum Non Conveniens Grounds. .................. 3

        1.  Plaintiff's Choice of Forum Is Entitled to Minimal, if Any, Deference. .... 3

        2.  The Relevant Private Interest Factors Favor Dismissal. ........................... 6

        3.  The Relevant Public Interest Factors Favor Dismissal. .......................... 10

            a.  England Has a Far Stronger Interest in this Dispute. ................... 10

            b.  This Case Will Require the Interpretation and Application of Recently-Enacted, Complex, and Unsettled Foreign Law. .......... 12

            c.  Other Public Interest Factors. ....................................................... 14

    D.  The FAC Should Be Dismissed on International Comity Grounds. ..................... 14

III. CONCLUSION ............................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                   **Pages**

*Alnwick v. European Micro Holdings, Inc.*,
    29 Fed. App'x 781 (2d Cir. 2002) ....................................................................................... 13

*Boston Telecommunications Group, Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ............................................................................................ 10

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*,
    155 F.3d 603 (2d Cir. 1998) ................................................................................................. 9

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) .............................................................................................. 6

*Cheng v. Boeing Co.*,
    708 F.2d 1406 (9th Cir. 1983) ............................................................................................ 14

*Cruise Connections Charter Management 1, LP v. Attorney General of Canada*,
    764 F. Supp. 2d 155 (D.D.C. 2011) .................................................................................... 13

*DiFederico v. Marriott Int'l, Inc.*,
    714 F.3d 796 (4th Cir. 2013) .............................................................................................. 13

*Doe v. Hyland Therapeutics Div.*,
    807 F. Supp. 1117 (S.D.N.Y. 1992) ................................................................................... 12

*Flack v. Nutribullet, L.L.C.*,
    2018 WL 6330421 (C.D. Cal. Dec. 4, 2018) ........................................................................ 5

*Friends of the Earth, Inc. v. Laidlaw Environment Services (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................................................. 1

*Giaguro S.p.A. v. Amiglio*,
    257 F. Supp. 2d 529 (E.D.N.Y. 2003) ................................................................................ 13

*Gross v. British Broadcasting Corp.*,
    386 F.3d 224 (2d Cir. 2004) ............................................................................................... 13

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ........................................................................................................... 15

*Harrison v. Wyeth Labs.*,
    510 F.Supp. 1 (E.D. Pa. 1980), *aff'd*, 676 F.2d 685 (3d Cir. 1982) ................................... 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008),
    *report and recommendation adopted in part*, 2009 WL 3443405
    (E.D.N.Y. Aug. 21, 2009),
    *aff'd*, 697 F.3d 154 (2d Cir. 2012) ........................................................................................ 3

*In re Air Crash at Madrid, Spain, on August 20, 2008*,
    893 F. Supp. 2d 1020 (C.D. Cal. 2011) .............................................................................. 12

*In re Alstom SA Securities Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ...................................................................................... 9

*In re Herbert*,
    2014 WL 1464837 (D. Haw. Apr. 14, 2014),
    *aff'd sub nom.* 686 Fed. App'x 520 (9th Cir. Apr. 14, 2017) ...................................................... 7

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................................ 9

*Kamel v. Hill-Rom Co.*,
    108 F.3d 799 (7th Cir. 1997) .......................................................................................... 4

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) .......................................................................................... 3

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009) ......................................................................................... 13

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) ................................................................................. *passim*

*Marshall v. Monster Beverage Corp.*,
    2014 WL 3870290 (N.D. Cal. 2014) ............................................................................... 4

*Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*,
    445 F. Supp. 3d 337 (N.D. Cal. 2020),
    *aff'd sub nom.* 847 Fed. App'x 509 (9th Cir. 2021) ................................................................ 7

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ........................................................................................ 14

*Nat'l Union Fire Ins. Co. v. BP Amoco, P.L.C.*,
    2003 WL 21180421 (S.D.N.Y. May 20, 2003) ............................................................... 13

*Nibirutech Ltd v. Jang*,
    2015 WL 831465 (N.D. Cal. Feb. 23, 2015) ............................................................. 7, 10

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005) ........................................................................................... 5

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ............................................................................................ *passim*

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003) ......................................................................................... 5, 9

*Rabbi Jacob Joseph School v. Allied Irish Banks, P.L.C.*,
    2012 WL 3746220 (E.D.N.Y. Aug. 2012) ...................................................................... 8

*Ravelo Monegro v. Rosa*,
    211 F.3d 509 (9th Cir. 2000) .......................................................................................... 6

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................................................................ 8

iii

DEFENDANT PUBMATIC, INC.'S REPLY ISO MOTION TO DISMISS FAC –
CASE NO. 21-CV-01497-PJH

*Reid-Walen v. Hansen*,
   933 F.2d 1390 (8th Cir. 1991) ..................................................................................................5

*Rogers v. Petroleo Brasileiro, S.A.*,
   741 F. Supp. 2d 492 (S.D.N.Y. 2010) .....................................................................................13

*Schijndel v. Boeing Co.*,
   263 Fed. App'x 555 (9th Cir. 2008) ..........................................................................................7

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ................................................................................................................10

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
   382 F.3d 1097 (11th Cir. 2004) .........................................................................................12, 13

*Tech. Dev. Co., Ltd. v. Onischenko*,
   536 F. Supp. 2d 511 (D.N.J. 2007) .........................................................................................13

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ..........................................................................................................1, 2

*Tuazon v. R.J. Reynolds Tobacco*,
   433 F.3d 1163 (9th Cir. 2006) .................................................................................................10

*Van Der Velde ex rel. Van Der Velde v. Philip Morris Inc.*,
   2004 WL 48891 (S.D.N.Y. Jan. 9, 2004) ................................................................................12

*Vivendi SA v. T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) ..........................................................................................4, 8, 10

**Statutes**

Business & Professions Code §§ 17200 ..........................................................................................5

**Foreign Authorities**

Data Protection Act 2018 .................................................................................................................4

The European Union General Data Protection Regulation (EU 2016/679) ........................... 4, 7, 13

The United Kingdom General Data Protection Regulation ................................................... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is an unprecedented attempt at forum shopping.  Plaintiff, a resident of England, is attempting to pursue a U.S. class action on behalf of an entirely foreign Proposed Class, under U.K. law, for alleged injuries felt abroad.  Plaintiff does not claim that his case would in any way be prejudiced if his case were heard in an English court, where it belongs.  Instead, he argues that the United States' minimal interest in overseeing a California-based company outweighs England's interest in hearing and resolving this case—even though this case involves an English plaintiff and an English and Welsh Proposed Class, suing for alleged injuries felt in England and Wales, under a newly-enacted U.K. regulatory regime that is still being interpreted and shaped by the English courts.  Plaintiffs' argument defies reason.  This case should be dismissed, on either forum non conveniens or international comity grounds.

Plaintiffs' FAC also fails to plead Article III standing and fails to state a claim under the U.K. GPDR.  Even after amending his pleadings in response to PubMatic's initial Motion to Dismiss, Plaintiff has not specified any wrongful conduct allegedly committed by PubMatic, as opposed to a third party, or shown that PubMatic would be liable for the actions of third parties under the U.K. GDPR.

PubMatic respectfully requests that the Court dismiss the FAC with prejudice for failure to state a claim, dismiss the FAC for lack of Article III standing, or in the alternative dismiss the FAC on forum non conveniens or international comity grounds.

## II. ARGUMENT

### A. Plaintiff Fails to Plead Article III Standing or a U.K. GDPR Violation.

To proceed in a U.S. District Court, Plaintiff must demonstrate both Article III standing and a viable cause of action.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209-11 (2021) (citing *Friends of the Earth, Inc. v. Laidlaw Environment Services (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  Plaintiff has done neither.

After PubMatic filed its Motion to Dismiss, the Supreme Court issued its ruling in *Ramirez*. 141 S. Ct. at 2209-11.  The *Ramirez* plaintiffs alleged that TransUnion violated the Fair Consumer

Reporting Act ("FCRA") by misreporting on plaintiffs' credit reports that they were on certain terrorist watch lists.  In reversing the lower court, the Supreme Court held that out of the 8,185 class members, only 1,853 had Article III standing to sue because the balance of the class could not prove that third parties received the alleged misreporting.  The Court reasoned that the FCRA claims at issue were akin to defamation claims, and therefore, third party publication was an essential requirement to demonstrate standing.  *Id.*

Here, Plaintiff does not allege that he interacted with PubMatic directly.  Instead, he only states that he found 45 "PubMatic cookies" on his browser after visiting various non-PubMatic websites, including one on January 8, 2021.  FAC ¶¶ 204-205.  Plaintiff does not provide details on whether PubMatic actually placed these cookies, or if one of the 10 websites he enumerated actually placed the cookies.  *See* FAC ¶ 203.  Plaintiff does not allege when or where PubMatic accessed any of these cookies, or if PubMatic actually processed any of them at all—after tacitly conceding that the cookies would do nothing on their own without further processing.  (Opp. at 22) ("Mr. Elliott clearly outlines how it is *not* the cookie *itself* that is the issue") (emphasis added). In short, even after amending his pleadings in response to PubMatic's initial Motion to Dismiss, Plaintiff *still* has not identified specific wrongful acts by PubMatic.

On the face of the allegations stated, Plaintiff has only claimed that he found numerous cookies on his browser, apparently placed there by third party websites.  Plaintiff has given this Court no guidance on whether third parties merely placing "PubMatic cookies" makes PubMatic vicariously liable under the U.K. GDPR, especially when there are no allegations regarding when or where PubMatic accessed or processed these cookies.  Plaintiff also gave this Court no guidance under the U.K. GDPR on whether PubMatic would have to actually access and process these cookies to be liable for what third parties placed on Plaintiff's browser.  Plaintiff cites to no U.K. guidance or case law on these issues, and instead resorts to U.S. case law that never addresses the U.K. GDPR or U.K. law.  Under the rationale of *Ramirez*, Plaintiff should at least be required to identify specific illegal acts by PubMatic itself under the U.K. GDPR, especially if Plaintiff is trying to hold it liable for the mere placement of cookies by third party websites.

Where Plaintiff has not actually specified facts to show an illegal act by PubMatic, or

otherwise shown how PubMatic would be liable for the actions of third parties under the U.K. GDPR, Plaintiff fails to show Article III standing and fails to state a viable cause of action.

### B. Plaintiff's Allegations Relating to the Privacy Shield Further Suggest Forum Shopping.

Apparently realizing that his reference to the Privacy Shield Framework highlighted his forum shopping, Plaintiff now downplays his numerous prior references to the U.S.-EU Privacy Shield program. (Opp. at 24-25.) Plaintiff only further illustrates that he is trying to evade the officially sanctioned channels to seek his grievances, including English courts and the Privacy Shield program. Nonetheless, Plaintiff is trying to force a U.S. court to address issues relating to the citizens and lawmakers of another country on the other side of the globe.

### C. The FAC Should Be Dismissed on Forum Non Conveniens Grounds.

A dismissal based on forum non conveniens is warranted where (1) there is "an adequate alternative forum" in which to try the plaintiff's claim and (2) the "balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001); *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 254 n.22 (1981). Plaintiff concedes that the English courts are an adequate alternative forum (Opp. at 7), and the private and public interest factors weigh in favor of dismissal. As a result, this case should be dismissed.

#### 1. Plaintiff's Choice of Forum Is Entitled to Minimal, if Any, Deference.

Plaintiff's choice of California as a forum is entitled to minimal or no deference. Plaintiff concedes, as he must, that "a foreign plaintiff's choice deserves less deference." (Opp. at 5). Plaintiff also does not dispute that his choice of forum receives less deference because he is suing on behalf of a putative class. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual … represents a class, the named plaintiff's choice of forum is given less weight."); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2008 WL 5958061, at *25 (E.D.N.Y. Sept. 26, 2008), *report and recommendation adopted in part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012) ("As the EU plaintiffs asserting foreign law claims are mostly foreign and have chosen a United States forum, their choice of forum deserves comparatively less deference."). And Plaintiff does not dispute the principle that a plaintiff's choice of forum is

entitled to less deference when there are signs of forum shopping. (Opp. at 5-6.) *See Marshall v. Monster Beverage Corp.*, 2014 WL 3870290, at *2 (N.D. Cal. 2014) (plaintiff's choice of forum "gets even less deference when there are signs of forum shopping"); *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694-95 (9th Cir. 2009) ("[T]he choice of forum … deserves reduced deference because the district court found that Vivendi had engaged in forum shopping.").

Rather, Plaintiff contends that his choice of California is entitled to some deference because he is not engaged in forum-shopping. (Opp. at 5-6.) The facts show otherwise. Plaintiff is a U.K. citizen living in England, suing on behalf of a putative class made up *entirely* of current and former residents of England and Wales, under U.K. law, for injuries felt in England and Wales. FAC ¶¶ 15, 21, 36, 200, 240, 267. Plaintiff could, and should have, brought this suit in an English court. Plaintiff admits that under the EU GDPR "court proceedings for exercising the right to compensation *must* be brought in one of the EU Member States," FAC ¶ 233, and U.K. law similarly confers jurisdiction on the courts of each part of the U.K. for matters under the Data Protection Act 2018 ("DPA 2018") and U.K. GDPR. DPA 2018 § 180. PubMatic has agreed to submit to jurisdiction in the U.K. concerning this matter if the Court dismisses this case on forum non conveniens or international comity grounds. Decl. of M. Mao ("Mao Decl.") at ¶¶ 2-3. Instead, Plaintiff is seeking to have a California court adjudicate the foreign law claims of an entirely foreign putative class.

Plaintiff's principal argument—that he is not forum shopping because "California is both PubMatic's home jurisdiction and has a strong connection to the subject matter of the case" (Opp. at 6)—fails because Plaintiff has not and cannot show a "strong connection" between this case and California as a forum. The crux of Plaintiff's argument is that California has a strong interest in this case because PubMatic is headquartered in California. That is not the law. If it were, dismissal on forum non conveniens grounds would never be appropriate where a defendant was sued in its home forum—but numerous cases have held otherwise. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 235, 241-247 (dismissing case where one defendant resided in the chosen forum); *Lueck*, 236 F.3d at 1147 (affirming forum non conveniens dismissal where one defendant resided in the chosen forum); *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 804 (7th Cir. 1997) (dismissing case from

defendant's home forum and noting that the presumption of convenience of a defendant's home forum is discounted when foreign plaintiffs sue an American corporation doing extensive foreign business).

The leading case cited by Plaintiff undercuts his position. *Norex Petroleum* explained that "'a plaintiff's choice of the defendant's home forum' *will not, by itself, warrant a presumption on convenience* but, when such a choice is 'made to obtain jurisdiction over defendant … substantial deference would still be generally appropriate.'" *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003)) (emphasis added). Because PubMatic has agreed to jurisdiction concerning this case in the U.K., no deference is warranted under this rule. Mao Decl. at ¶¶ 2-3. Further, *Norex Petroleum* relied on *Pollux Holding*, where the Second Circuit affirmed the dismissal of claims brought by foreign plaintiffs against Chase, a U.S.-based bank, reasoning:

> Although a plaintiff's choice of forum will not necessarily merit less deference because plaintiff is suing outside her home forum, such a choice made to obtain jurisdiction over defendant is an instance where substantial deference would still be generally appropriate. But it is an untenable leap of logic to jump from that holding to the blanket assertion that a plaintiff's choice of forum deserves presumptive deference simply because the chosen forum is defendant's home forum. It is reasonable for a court to assume that a plaintiff's choice of her own home forum is motivated by convenience. The plaintiff's choice of the defendant's home forum provides a much less reliable proxy for convenience. Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, *a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy.* Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum—as opposed to any other where the defendant is also amenable to suit—only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum.

*Pollux Holding*, 329 F.3d at 73-74 (emphasis added).[1] Plaintiff could have sued and *can* sue

---

[1] The other two cases cited by Plaintiffs are factually inapposite. *Flack v. Nutribullet, L.L.C.* involved claims brought under California law, including Business & Professions Code §§ 17200, *et seq.*, concerning an allegedly defective product designed in California. *See* 2018 WL 6330421, at *1 (C.D. Cal. Dec. 4, 2018). In *Reid-Walen v. Hansen*, the plaintiff was a U.S. citizen, and was thus entitled to a strong presumption in favor of her choice of forum. *See* 933 F.2d 1390, 1394 (8th Cir. 1991).

PubMatic in the U.K., a forum that is "much more closely connected" to the "circumstances of the case." *Id.* The Court can infer that Plaintiff's insistence on instead suing PubMatic in California, which has little to no interest in this case, is motivated by strategic concerns.

Plaintiff's citation to PubMatic's Publisher Master Services Agreement also does not support his arguments. (Opp. at 6.) Plaintiff is not a party to the Agreement, and is not suing under the Agreement. The Agreement also *expressly* provides for the application of California law, which would bar Plaintiff's claims here. (Agreement § 11.) The fact that PubMatic agreed to jurisdiction in California for specific disputes, governed by California law, hardly supports Plaintiff's argument that California is the appropriate forum for *all* PubMatic disputes.

And this dispute is at the far end of the spectrum. Plaintiff is a foreign resident, seeking to represent an entirely foreign class, suing under foreign law, for damages felt abroad. This is a classic example where a "foreign plaintiff chooses the home forum of an American defendant in an action that has little or no relation to the United States in order to take advantage of more favorable American procedural or substantive rules." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000). Whether Plaintiff's choice of forum is afforded some, slight, or no deference, the result is the same: this case should be dismissed on forum non conveniens grounds.

### 2. The Relevant Private Interest Factors Favor Dismissal.

The most significant private interest factor here is the Court's potential inability to compel evidence from non-party witnesses based in the U.K. Plaintiff offers several arguments against that factor, but none withstand scrutiny.

First, Plaintiff contends that "[o]ther circuits" require an allegation or showing that witnesses would be unwilling to testify. (Opp. at 10.) But Plaintiff does not claim there is any such requirement in *this* circuit, and the in-circuit authority cited by Plaintiff does not reflect any such rule. The Ninth Circuit observed in *Carijano v. Occidental Petroleum Corp.* that "[t]he proponent of a forum non conveniens dismissal is not required to identify potentially available witnesses in exact detail," 643 F.3d 1216, 1231 (9th Cir. 2011) (citing *Piper Aircraft*, 454 U.S. at 258), and multiple courts have found that this factor weighs in favor of dismissal without requiring any specific showing of witnesses' unwillingness to testify voluntarily. *See, e.g.*, *Lueck*, 236 F.3d

at 1146-47 ("The documents and witnesses in the United States are all under the control of Plaintiffs and Defendants, so they can be brought to court, no matter the forum. The documents and witnesses in New Zealand, however, are not so easily summoned to the United States."); *Schijndel v. Boeing Co.*, 263 Fed. App'x 555, 557 (9th Cir. 2008) ("[T]he district court properly considered the fact that many important witnesses and a great deal of evidence relevant to the contributory causes of Van Schijndel's injuries is located in Singapore."); *Nibirutech Ltd v. Jang*, 2015 WL 831465, at *6 (N.D. Cal. Feb. 23, 2015) (Hamilton, J.) (granting forum non conveniens motion where plaintiff could not be compelled to produce witnesses in California); *Mayhem Crude, Inc. v. Borrelli Walsh Pte. Ltd.*, 445 F. Supp. 3d 337, 346 (N.D. Cal. 2020), *aff'd sub nom.* 847 Fed. App'x 509, 510 (9th Cir. 2021) (granting forum non conveniens motion where "most of the witnesses [were] in Singapore"); *In re Herbert*, 2014 WL 1464837, at *5 (D. Haw. Apr. 14, 2014), *aff'd sub nom.* 686 Fed. App'x 520, 522 (9th Cir. Apr. 14, 2017) (granting forum non conveniens motion where "third-party asbestos and product identification witnesses located in Indonesia cannot be compelled to testify in this Court").

Second, Plaintiff suggests that PubMatic can compel foreign publishers to produce witnesses in the U.S. through its Publisher Master Services Agreement, because those parties "already contractually agreed to submit to this Court's jurisdiction." (Opp. at 10.) Signatories to the Agreement, however, only consented to jurisdiction in California "in any dispute arising under or in connection with this Agreement." (Agreement § 11.)

Third, Plaintiff claims that "it is up to PubMatic to be able to demonstrate its compliance" with the U.K. GDPR, "not publishers with which it contracts." (Opp. at 11.) Plaintiff misses the point. Websites using PubMatic's services are contractually obligated to obtain any user consent required under the EU GDPR or U.K. GDPR. *See* FAC ¶ 138. As a result, PubMatic may need to obtain testimony and evidence from those publishers to rebut Plaintiff's claims that PubMatic did not have user consent, or that that PubMatic's "reliance on consent obtained by publishers is insufficient." *Id.* ¶ 140. If this Court cannot compel testimony from publishers who are not willing to voluntarily provide discovery, PubMatic's defense will be significantly prejudiced.

Fourth, Plaintiff speculates that "many of the publishers with which the putative class likely

interacted are located within the U.S." (Opp. at 11.) This is pure speculation, and the scope of Plaintiff's proposed class—"[a]ll persons residing or who resided in England and Wales who used Chrome, Edge, or Internet Explorer browsers and have had a PubMatic cookie placed on their device" from May 25, 2018 through the present, FAC ¶¶ 240, 242—means that all contacts between residents of England or Wales and publishers using PubMatic's services are potentially relevant. Even if some of those publishers are in the U.S., many will be located in the U.K. and thus may be beyond the reach of this Court.

Fifth, Plaintiff argues that PubMatic can obtain needed evidence through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Opp. at 6). However, Hague procedures are notoriously burdensome and inefficient. *See, e.g.*, *Vivendi*, 586 F.3d at 696 ("[T]he district court concluded, based on its experience, that the ability of the court to compel unwilling witnesses to testify slightly favors dismissal because the Hague Convention's letters rogatory process, which would be necessary to produce proof for an American trial, is more cumbersome than European Commission Regulations for taking evidence within Europe."); *Rabbi Jacob Joseph School v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 2012) ("[E]ven assuming the English and Irish authorities comply with these [Hague] requests … Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly made litigation in the United States convenient.") (collecting cases). "The massive inefficiency and inconvenience" associated with Hague Convention procedures "is all the more striking given the existence of an alternative forum where many of these problems would not arise"—namely, an English court. *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 162 (S.D.N.Y. 2004).

At bottom, the analysis here is straightforward. Plaintiff claims that "PubMatic's reliance on consent obtained by publishers is insufficient," because, among other issues, PubMatic allegedly "fails to assure ongoing compliance," and users do not know "when PubMatic claims to rely on publisher consent." FAC ¶¶ 140. PubMatic may need testimony and evidence from U.K.-based publishers in order to rebut those allegations, and this Court may not be able to compel those publishers to produce discovery in the U.S. (Mem. at 13.) Even if PubMatic can obtain some

discovery through the Hague Convention, allowing this case to proceed in California will impose an unnecessary burden on PubMatic. Plaintiff, on the other hand, has not made any argument that he will be hindered if this case is heard in an English court. (Opp. at 10-11.) As a result, this factor weighs in favor of an English forum. *See Lueck*, 236 F.3d at 1146-47 (inability to compel evidence from nonparties in New Zealand weighed in favor of dismissal based on forum non conveniens)*; Pollux Holding*, 329 F.3d at 75 (availability of compulsory process weighed heavily in favor of dismissal where defendant "identified several key witnesses whose testimony can be compelled only in England."); *Capital Currency Exch.*, *N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611-12 (2d Cir. 1998) (finding England a more appropriate forum where witnesses were not subject to compulsory process in the U.S.).

The other private interest factors are neutral. Plaintiff is a U.K. resident but is seeking a California forum; PubMatic, on the other hand, is willing to bear the incremental burden of having this case heard in England, where it logically belongs. As a result, the residence of the parties and witnesses, the forum's convenience to the litigants, and the costs of bringing witnesses to trial are neutral. Aside from evidence in the hands of publishers, discussed above, the majority of the evidence of this case will consist of electronic business records held by PubMatic and testimony from its employees. *See* FAC ¶ 231. PubMatic has agreed to produce those records and witnesses in an English proceeding. *See* Mao Decl. ¶¶ 2-3. As such, this factor is also neutral. And neither party contends that the enforceability of a judgment is an issue for the purposes of this motion.[2]

---

[2] While Plaintiff claims that "[o]ther Courts have certified foreign classes of individuals," (Opp. at 12), the two cases cited by Plaintiff involved classes of U.S. plaintiffs, suing under U.S. law, that also included some foreign plaintiffs—a far cry from an entirely-foreign Proposed Class here, asserting claims only under foreign law. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 109 (S.D.N.Y. 2007) (certifying class of "all persons from the United States, France, England, and the Netherlands who purchased or otherwise acquired" Vivendi shares for § 10(b) securities fraud case); *In re Alstom SA Securities Litig.*, 253 F.R.D. 266, 272 (S.D.N.Y. 2008) (certifying class including U.S., Canadian, English, and Dutch purchasers of Alstom shares for § 10(b) securities fraud case).

### 3. The Relevant Public Interest Factors Favor Dismissal.

#### a. England Has a Far Stronger Interest in this Dispute.

As a threshold matter, Plaintiff's claim that "the Ninth Circuit only asks if there is an identifiable local interest in the controversy, not whether another forum also has an interest or more of an interest," is incorrect, and based on dicta. (Opp. at 14.) In *Tuazon v. R.J. Reynolds Tobacco*, 433 F.3d 1163, 1182 (9th Cir. 2006), the court found that the "equipoise of interests" between the United States and the Philippines "favors neither jurisdiction." Similarly, in *Boston Telecommunications Group, Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009), the court found that "California 'has an interest in preventing fraud from taking place within its borders' that is at least as strong as Slovakia's interest in this case." Both courts weighed both potential forums' respective interests in the litigation. If these portions of *Tuazon* and *Boston Telecommunications Group* were *not* dicta, they would be inconsistent with Supreme Court precedent showing that courts *must* gauge the comparative interests of potential forums. *See Piper Aircraft*, 454 U.S. at 260 (weighing Scotland's "very strong interest in this litigation" against "the incremental deterrence that would be gained if this trial were held in an American court," and affirming district court's conclusion that "the public interests favored trial in Scotland"); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007) (holding that claim based on misrepresentations to a Chinese court was "an issue best left for determination by the Chinese courts"). The Ninth Circuit has followed that approach, as it must—and as it did even in *Tuazon* and *Boston Telecommunications Group*. *See, e.g.*, *Lueck*, 236 F.3d at 1147 (weighing New Zealand's "extremely high" interest in the crash of a New Zealand airplane carrying New Zealand passengers against Arizona's "comparatively low" interest in "the manufacturing of defective products by corporations" based in Arizona); *Vivendi*, 586 F.3d at 696 ("[T]he district court did not err when determining the public interest factors tipped toward dismissal. The district court correctly observed that any local interest in this case … is slight and does not exceed or even come close to the interest other [European] forums … have in the adjudication of this controversy.") (alterations in original); *accord Nibirutech*, 2015 WL 831465, at *7 (Hamilton, J.) ("Thus, there is minimal, if any, local (California) interest in this case. The Chinese courts would have a

significantly greater interest in resolving such a dispute[.]").

England has a very strong interest in hearing this dispute. Plaintiff is a resident of England and suffered his alleged injuries in England; the Proposed Class is made up entirely of residents or former residents of England and Wales, who suffered any alleged injuries in England and Wales; and Plaintiff's claims expressly arise *only* under U.K. law. That law, the U.K. GDPR, is a newly-enacted regulatory regime that is still in the early days of its interpretation and development.[3] Litigation under the U.K. GDPR will require courts to interpret significant provisions of the U.K. GDPR for the first time. That task will likely force courts to address fundamental questions about whether and to what extent English courts should continue to follow pre-2021 EU precedents, and the extent to which they should consider later EU decisions—issues that go beyond the U.K. GDPR and concern the overall direction of U.K. law post-Brexit. (Mem. at 16.) On the other hand, California's interest in this case, as described by Plaintiff, is a generalized "interest in regulating its corporations" and "assisting enforcement of foreign law when violated by one of its citizens."[4] (Opp. at 14.) England's interest is plainly stronger.

Courts have repeatedly weighed these types of competing interests in cases where U.S.-based airplane or airplane parts manufacturers have been sued for air crashes abroad, and have repeatedly found that the foreign forum's interest in protecting its citizens outweighs a U.S. forum's diffuse interest in overseeing a U.S.-based business. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 260-61 (American interest in "ensuring American manufacturers are deterred from producing defective products" was "simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here"); *Lueck*, 236 F.3d at 1147 (finding that Arizona's "interest in the manufacturing of defective products by

---

[3] Among other issues, a task force appointed by Prime Minister Johnson recently proposed *replacing* the U.K. GDPR with a "new, more proportionate" regulatory framework. *See* https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/994125/FINAL_TIGRR_REPORT__1_.pdf

[4] Plaintiff also states that California has an interest in "shaping the impact any rulings will have on the local AdTech industry," (Opp. at 14) but his tacit admission that the adjudication of this case will "shape the impact" of the U.K. GDPR actually highlights *England's* greater interest in this case, as discussed further below.

corporations in their forum" was "slight" and "comparatively low."); *In re Air Crash at Madrid, Spain, on August 20, 2008*, 893 F. Supp. 2d 1020, 1038-39 (C.D. Cal. 2011) (noting that although "courts have recognized a local interest in air crash cases against airplane and parts manufacturers with local ties," that "has rarely trumped the interest of a foreign state with ties to the crash, and more particularly to the crash victims.") (collecting cases). The same is true outside of the air crash context. *See, e.g.*, *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1128 (S.D.N.Y. 1992) ("general American regulatory interest" in a dispute based on defendant's processing of blood products was outweighed by Ireland's "intensely local interest" in adjudicating a controversy that profoundly affects its own citizens); *accord SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1099 (11th Cir. 2004) ("[I]t is clear that a sovereign has a very strong interest when its citizens are allegedly victims and the injury occurs on home soil."); *Harrison v. Wyeth Labs.*, 510 F.Supp. 1, 4 (E.D. Pa. 1980), *aff'd*, 676 F.2d 685 (3d Cir. 1982) ("The United States should not impose its own view of the safety, warning, and duty of care required of drugs sold in the United States upon a foreign country when those same drugs are sold in that country."); *Van Der Velde ex rel. Van Der Velde v. Philip Morris Inc.*, 2004 WL 48891, at *7 (S.D.N.Y. Jan. 9, 2004) ("It is clear that England considered both public safety and public revenue when regulating cigarettes ... and thus, as explained in *Hyland Therapeutics*, the balance of these competing concerns … is best left to the forum (in this case England) that made these initial policy decisions.").

### b. This Case Will Require the Interpretation and Application of Recently-Enacted, Complex, and Unsettled Foreign Law.

Plaintiff's argument that the application of foreign law *alone* does not warrant dismissal on forum non conveniens grounds is a straw man. (Opp. at 15-16.) The burden associated with interpreting and applying foreign law is not the only factor weighing in favor of dismissal here. Moreover, Plaintiff notably does not cite a single case involving a foreign plaintiff suing under foreign law, where a foreign court provided an adequate alternative forum. Most of the cases offered by Plaintiff involve U.S. plaintiffs, whose choice of forum was entitled to substantial deference. *See Alnwick v. European Micro Holdings, Inc.*, 29 Fed. App'x 781, 782-83 (2d Cir.

2002) (plaintiffs were residents of New York entitled to a "strong presumption."); *SME Racks, Inc.*, 382 F.3d at 1099 (plaintiffs were residents of Florida and district court erred by "failing to apply the strong presumption that a United States citizen will not be ousted from the courts of this country."); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 802-04 (4th Cir. 2013) (plaintiffs were U.S. citizens entitled to "heightened deference."); *Rogers v. Petroleo Brasileiro, S.A.*, 741 F. Supp. 2d 492, 496, 506 (S.D.N.Y. 2010) (plaintiffs were Florida and Connecticut citizens "entitled to great deference."). In the two cases that involved foreign plaintiffs, the statements cited by Plaintiff are dicta—among other issues, both courts held that there was not an adequate alternative forum, and neither decided whether foreign law would apply. *See Giaguro S.p.A. v. Amiglio*, 257 F. Supp. 2d 529, 536, 539 (E.D.N.Y. 2003) ("[P]laintiffs literally have no alternative forum other than to adjudicate before this court."); *Tech. Dev. Co., Ltd. v. Onischenko*, 536 F. Supp. 2d 511, 521-22 (D.N.J. 2007) ("Onischenko has not met his burden of showing that Russia is an adequate alternative forum.").

Plaintiff's contention that the Court and a jury can readily interpret and apply the U.K. GDPR because U.K. and American law share a "common origin" also does not hold water. That principle applies to the common law, not statutory and regulatory schemes like the U.K. GDPR— which has its roots in a European Union regulation, the EU GDPR. The three cases cited by Plaintiff all involve common law claims. *Gross v. British Broadcasting Corp.*, 386 F.3d 224, 228 (2d Cir. 2004) (misappropriation of ideas and unjust enrichment); *Nat'l Union Fire Ins. Co. v. BP Amoco, P.L.C.*, 2003 WL 21180421, at *1 (S.D.N.Y. May 20, 2003) (contract dispute); *Cruise Connections Charter Management 1, LP v. Attorney General of Canada*, 764 F. Supp. 2d 155, 158 (D.D.C. 2011) (breach of contract and unfair trade practices). That is not the case here.

Finally, Plaintiff's argument that the Court *can* interpret the U.K. GDPR answers the wrong question. (Opp. at 15.) The relevant issue in a forum non conveniens analysis is whether it will be *burdensome* for the Court to familiarize itself with, interpret, and apply foreign law. The answer is clearly that it will be. *See, e.g.*, *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009) ("In the court's view, the need to apply foreign law strongly favors dismissal based on forum non conveniens."); *Lueck*, 236 F.3d at 1144-47 ("[R]equiring district

courts to interpret the law of foreign jurisdictions … is diametrically opposed to … [forum non conveniens] doctrine's purposes, as it was 'designed in part to help courts avoid conducting complex exercises in comparative law.'"). (Mem. at 19-20).

### c. Other Public Interest Factors.

The remaining public interest factors are driven by the two factors above. Because England has the stronger interest in hearing this dispute and this case arises entirely under U.K. law, proceeding in this forum would impose an undue burden on this Court and potential jurors, and force this Court to bear the cost of resolving a dispute with minimal connections to this forum. *See Cheng v. Boeing Co.*, 708 F.2d 1406 at 1411 (9th Cir. 1983) ("[A] trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.").

### D.     The FAC Should Be Dismissed on International Comity Grounds.

Two of Plaintiff's arguments against the application of international comity in this case are red herrings. In *Mujica v. AirScan Inc.*, 771 F.3d 580, 599-603 (9th Cir. 2014), the Ninth Circuit made it clear that a "true conflict" of laws is not a prerequisite to the application of international comity, and under its three-part framework for international comity, the absence of a conflict does not weigh against a dismissal on comity grounds. The *Mujica* court dismissed that case on international comity grounds, even where there was no "true conflict." *Id.* at 603-05. Contrary to Plaintiff's claims (Opp. at 21) the fact that Plaintiff is expressly suing only under foreign law does not weigh in favor of adjudicating this case in California. Plaintiff also argues that comity is "improper" because there is no past or pending judicial proceeding against PubMatic in England. (Opp. at 19.) However, Plaintiff also notes that a dismissal on comity grounds may be proper where there is a "potential" judicial proceeding elsewhere (*id.* (quoting *Mujica*, 771 F.3d at 600-01)) and it is certainly possible that other U.K. citizens could bring suit against PubMatic or PubMatic Limited in the U.K.

Plaintiff's remaining point is that the United States' interest in hearing this case outweighs England's interest. However, the gravamen of Plaintiff's argument is simply that this court should

14

1 hear this case because PubMatic is based in California.  (Opp. at 20.)  Even if that interest
2 outweighed the United States' competing interest in having "localized controversies decided at
3 home," *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947), that interest is very limited.  As
4 discussed above in the forum non conveniens context, courts have generally found that interest
5 outweighed by foreign governments' interests when their citizens are injured abroad.  Plaintiff also
6 gives extremely short shrift to England's overwhelming interests in this case.  It is undisputed that
7 this case concerns claims raised by a resident of England, on behalf of a Proposed Class in England
8 and Wales, under U.K. law, for damages felt in England and Wales.  England has a strong interest
9 in hearing and resolving that dispute.  That interest is heightened because Plaintiff is suing under
10 a regulatory regime rather than a matter of private contract, tort, or property, and further heightened
11 because the English courts are still developing the law of the U.K. GDPR.  England has a strong
12 interest in having its courts shape its new privacy and data protection regime.  Taken together,
13 England's interests far outweigh any interest the U.S. has in hearing this case.  As a result, the
14 Court should dismiss this case on international comity grounds.

## III.  CONCLUSION

PubMatic respectfully requests that the Court dismiss the FAC with prejudice for failure to state a claim, dismiss the FAC for lack of Article III standing, or in the alternative dismiss the FAC on forum non conveniens or international comity grounds.

Dated: July 19, 2021

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

By:  */s/ Mark C. Mao*
Mark C. Mao (SNB 271082)
   mmao@bsfllp.com
Beko O. Reblitz-Richardson (SBN 238027)
   brichardson@bsfllp.com
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800; Fax: (415) 293-6899

Edward H. Takashima (SBN 270945)
   etakashima@bsfllp.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017
Tel.: (213) 629-9040; Fax: (213) 629-9022
*Attorneys for PubMatic, Inc.*

15

DEFENDANT PUBMATIC, INC.'S REPLY ISO MOTION TO DISMISS FAC –
CASE NO. 21-CV-01497-PJH