1
2
3
4
5
6
7
8
9
10
11
12
13

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUGO ELLIOTT,

             Plaintiff,

    v.

PUBMATIC, INC.,

             Defendant.

Case No.  21-cv-01497-PJH

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

Re: Dkt. No. 23

14

      Defendant PubMatic, Inc.'s motion to dismiss came on for hearing before this court

15 on August 12, 2021.  Plaintiff appeared through his counsel, Caroline Taylor and Andrew

16 Hathaway.  Defendant appeared through its counsel, H. Mark Mao and Ed Takashima.

17 Having read the papers filed by the parties and carefully considered their arguments and

18 the relevant legal authority, and good cause appearing, the court hereby **GRANTS**

19 defendant's motion, for the following reasons in addition to those stated at the hearing.

20 **I.      BACKGROUND**

21       Plaintiff Hugo Elliott is a U.K. citizen residing in England.  Defendant PubMatic,

22 Inc. ("PubMatic") is incorporated under the laws of the State of Delaware with its principal

23 place of business in Redwood City.  FAC ¶¶ 17-18.  PubMatic is a digital advertising

24 technology company with some focus on targeted advertising.  FAC ¶¶1, 67.  It assists

25 websites with the management and sale of their advertising space. FAC ¶67.

26 Elliott frequently browses websites while he is located in the United Kingdom.  FAC ¶

27 202.  As part of its business practices, PubMatic placed unique and therefore

28 individuating identifiers in the form of cookies on Elliott's device and used those uniquely

1 identifying cookies to monitor and track Elliott's U.K.-based online activities.  FAC ¶¶70,

2 219.  At the time of filing the original complaint, Elliott had 45 PubMatic cookies on his

3 Chrome browser.  FAC ¶ 205.

4       Elliott claims he was harmed by PubMatic's alleged internet cookie placement

5 practices in violation of his U.K. data privacy rights.  FAC ¶¶ 15, 200.  Elliott seeks to

6 represent a class of "[a]ll persons residing or who resided in England and Wales who

7 used Chrome, Edge, or Internet Explorer browsers and have had a PubMatic cookie

8 placed on their device during the Relevant Time Period."  FAC ¶ 240.  Elliott defines the

9 "Relevant Time Period" as May 25, 2018, through the present.  FAC ¶ 242.

10 U.K. GDPR

11       Plaintiff brings this action under the United Kingdom's General Data Protection

12 Regulation ("U.K. GDPR").  "The UK GDPR is a regulation that lays out rules relating to

13 the protection of natural persons with regard to the processing of personal data, and rules

14 relating to the free movement of personal data in the United Kingdom."  FAC ¶ 31.  The

15 U.K. GDPR protects natural persons' personal data in part by limiting the use of uniquely

16 identifying cookie IDs where consent is not expressly granted.  FAC ¶¶ 38, 50.  The U.K.

17 GDPR provides a private right of action for violations.  FAC ¶ 53 (citing U.K. GDPR,

18 Article 79(1)).

19       The U.K. GDPR was adopted in 2018 to implement the European Union's GDPR,

20 originally passed on April 14, 2016.  FAC ¶ 28.  Following the departure of the U.K. from

21 the E.U. (i.e., "Brexit"), residents of the U.K. are only covered by the U.K.'s GDPR, not

22 the EU GDPR.  FAC ¶ 32.

23       The U.K. legislation contains "materially identical" obligations to the EU GDPR.

24 FAC ¶ 33.  However, there is one substantive difference relevant here: unlike the EU's

25 GDPR, the U.K. GDPR does not require complaints to be filed in a European court.  FAC

26 ¶ 35.  Plaintiff contends that this enables "UK plaintiffs to sue outside of the UK, including

27 within the United States."  FAC ¶ 35.

28

United States District Court
Northern District of California

Procedural History

Elliott filed the original complaint in this court on March 3, 2021.  Dkt. 1.  In response to a motion to dismiss, he filed the first amended complaint ("FAC"), the pleading now at issue.  Dkt. 21.

Elliott asserts one cause of action for violation of the U.K. GDPR, FAC ¶¶ 36, 267, which he specifies as the "General Data Protection Regulation in force in the United Kingdom at the time of this Complaint."  FAC ¶ 2; see id. ¶ 37 & Ex. A.

PubMatic filed the instant motion to dismiss the FAC in its entirety on June 4, 2021.  Dkt. 23.  Alongside, PubMatic included an attorney declaration certifying that "if this Court dismisses Plaintiff's First Amended Complaint on forum non conveniens or international comity grounds, PubMatic agrees to submit to jurisdiction in the courts of England and Wales for the purposes of Count 1 of Plaintiff's First Amended Complaint." Mao Decl. (Dkt. 23-1) ¶ 2.

## II.    DISCUSSION

Defendant's motion is brought under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the motion raises issues of standing, forum non conveniens, and international comity.  Because the court grants dismissal on forum non conveniens and international comity grounds, it does not reach the issue of standing.

### A.    Forum Non Conveniens

In general, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties."  Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947)).  Once a district court determines that the appropriate forum is located in a foreign country, the court may dismiss the case.  Cheng v. Boeing Co., 708 F.2d 1406, 1409 (9th Cir. 1983).

Before dismissing an action based on forum non conveniens, district courts analyze whether an adequate alternative forum exists, and whether the balance of private and public interest factors favors dismissal.  Lueck, 236 F.3d at 1142; see also Gutierrez

United States District Court
Northern District of California

1    v. Advanced Medical Optics, Inc., 640 F.3d 1025, 1029 (9th Cir. 2011).  Generally, the

2    requirement of an adequate alternative forum will be met when the defendant is

3    "amenable to process" in the other jurisdiction.  Piper Aircraft, 454 U.S. at 255, (quoting

4    Gulf Oil, 330 U.S. at 506-7).

5          The private interest factors include: "(1) the residence of the parties and the

6    witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence

7    and other sources of proof; (4) whether unwilling witnesses can be compelled to testify;

8    (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all

9    other practical problems that make trial of a case easy, expeditious and inexpensive."

10   Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1229 (9th Cir. 2011) (internal

11   citations omitted).  The public-interest factors include: "(1) the local interest in the lawsuit,

12   (2) the court's familiarity with the governing law, (3) the burden on local courts and juries,

13   (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a

14   particular forum."  Bos. Telecommunications Grp., Inc. v. Wood, 588 F.3d 1201, 1211

15   (9th Cir. 2009) (internal quotation marks and citations omitted).

16         Here, there is no argument—there exists an adequate alternative forum.

17   Defendant is amenable to process in the U.K. if this court dismisses the case on forum

18   non conveniens or international comity grounds.  Mao Decl. at ¶¶ 2-3.  Both sides

19   acknowledge that the courts of the U.K. would serve as an adequate alternative forum.

20   Even though a plaintiff's choice of forum is typically entitled to substantial deference, the

21   choice of Mr. Elliott, as a foreign plaintiff, deserves less deference.  Piper Aircraft, 454

22   U.S. at 256; see Lueck, 236 F.3d at 1143.  Cutting further against the deference usually

23   owed to a plaintiff's choice of forum, Mr. Elliott seeks to represent a putative class

24   comprised solely of foreign putative class members.  Lou v. Belzberg, 834 F.2d 730, 739

25   (9th Cir. 1987).  With the adequacy of an alternative forum established and the weight of

26   plaintiff's forum selection diminished, the analysis proceeds to the balancing of both

27   private interest and public interest factors.

28         As explained at the hearing, the court finds that the private interest factors do not

4

1   cut sharply in favor of either the U.S. or the U.K as a forum.  The court does not consider

2   all the private interest factors again here, but they generally come out neutral where

3   neither jurisdiction is entirely convenient to either side and the locations of necessary

4   evidence and witnesses remains unclear.

5          On the other hand, the public interest factors weigh heavily in favor of the U.K. as

6   the appropriate forum for this dispute.  The first public interest factor, the local interest in

7   the dispute, weighs in favor of the U.K.  Plaintiff is a resident of England and suffered his

8   alleged injuries in England; the Proposed Class is made up entirely of residents or former

9   residents of England and Wales, who suffered any alleged injuries in England and Wales;

10  and Plaintiff's claims expressly arise only under (a new) U.K. law.  While there may

11  indeed be some local interest in ensuring California-based entities do not violate

12  regulations elsewhere, a foreign forum's interests in protecting its citizens and vindicating

13  its own regulatory scheme far outweigh the local interest in overseeing a U.S.-based

14  business.  The second factor, the court's familiarity with the governing law, additionally

15  weighs against this court as the appropriate forum.  This court lacks familiarity with the

16  U.K. GDPR, a law that is still being developed in the U.K.  It would be burdensome for the

17  court to familiarize itself with, interpret, and apply this foreign law.  The third, fourth, and

18  fifth factors, the burden on local courts and juries, the congestion in the court, and the

19  costs of resolving a dispute unrelated to a particular forum, additionally weigh against this

20  forum where plaintiff asks California jurors to apply foreign law to award damages to an

21  entirely foreign class.

22         On balance, the private interest factors and the public interest factors together

23  weigh in favor of dismissal on forum non conveniens grounds.  California has little

24  interest in hosting this dispute, and PubMatic's willingness to submit to U.K. jurisdiction

25  mitigates against this foreign plaintiff's choice of forum.  The court therefore dismisses

26  the case on forum non conveniens grounds.

27         **B.     International comity**

28         International comity "is the recognition which one nation allows within its territory to

5

the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." In re Simon, 153 F.3d 991, 998 (9th Cir.1998) (internal quotation omitted). "International comity is a doctrine of prudential abstention, one that 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law.'" Mujica v. AirScan Inc., 771 F.3d 580, 598 (9th Cir. 2014) (quoting United States v. Nippon Paper Indus. Co., 109 F.3d 1, 8 (1st Cir.1997)).

There are two doctrines recognized under "international comity." In re Korean Ramen Antitrust Litig., 281 F. Supp. 3d 892, 907 (N.D. Cal. 2017). The first is "legislative or prescriptive comity," which "guides domestic courts as they decide the extraterritorial reach of federal statutes." Mujica, 771 F.3d at 598. The second "is referred to as 'comity among courts' or adjudicatory comity, which 'may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state.'" Id. at 599 (quoting In re Maxwell Commc'n Corp. plc by Homan, 93 F.3d 1036, 1047 (2d Cir.1996)). Considerations in determining whether to abstain for comity to an international tribunal include the strength of the various governments' interests, the adequacy of the foreign forum, any conflicts between the laws of the jurisdictions, and the extraterritorial reach of the laws at issue. Mujica, 771 F.3d at 600-604. In looking to the various governmental interests, the critical factor is where the conduct in question took place, "conduct" including not only the actions of the defendants but the injury suffered by plaintiffs. Mujica, 771 F.3d at 605 (citing Torres v. S. Peru Copper Corp., 965 F. Supp. 899, 909 (S.D. Tex. 1996), dismissing action under comity where the "activity and the alleged harm occurred entirely in Peru [and] Plaintiffs are all residents of Peru.") (emphasis added).

Here, there is no need to repeat the earlier discussion regarding an adequate alternative forum. The courts of the U.K. provide an adequate alternative, and defendant

1    already certified its acceptance of U.K. jurisdiction over this case should it be dismissed

2    here.  But further, adjudicatory comity clearly applies given that this case is properly

3    adjudicated in a foreign state.  The U.K. has a strong interest in addressing injuries to

4    English and Welsh subjects, particularly injuries to rights created by U.K. legislation.

5    While plaintiff focuses on the California-based conduct of PubMatic, he glosses over any

6    potential conduct by the company in the U.K. and the injuries suffered to a class of

7    plaintiffs in England and Wales.  Moreover, the U.K. has a strong interest in interpreting

8    and applying its own regulatory scheme for Internet privacy, a scheme largely lacking in

9    precedent.  All of these considerations lead to the conclusion that this court must abstain

10   from this case.  The court therefore alternatively dismisses the case on international

11   comity grounds.

**III.    CONCLUSION**

12

13        For the reasons stated above, including the applicability of the doctrines of forum

14   non conveniens and international comity, the court **GRANTS** defendant's motion to

15   dismiss without prejudice to filing the case in the appropriate forum.

16        **IT IS SO ORDERED.**

17   Dated: August 16, 2021

18                                              */s/ Phyllis J. Hamilton*
                                                PHYLLIS J. HAMILTON
19                                              United States District Judge